UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Philadelphia Newspapers, LLC, *et al.*, | ) | Case No. 09-11204(SR) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| Philadelphia Newspapers, LLC, *et al.* 400 North Broad Street Philadelphia, PA 19103, | ) | Adversary No. 10-00110(SR) |
| Plaintiffs, | ) | |
| v. | ) | |
| Citizens Bank of Pennsylvania 1701 John F. Kennedy Boulevard 22nd Floor Philadelphia, PA 19103, | ) | |
| Wells Fargo Foothill, Inc. 2450 Colorado Avenue, Suite 3000W Santa Monica, CA 90404, | ) | |
| Credit Suisse Loan Funding LLC 11 Madison Avenue New York, NY 10010, | ) | |
| Defendants. | ) | |

### DEBTORS' MOTION FOR INJUNCTIVE RELIEF

The above-captioned Debtors (the "Debtors"), by and through their undersigned counsel, pursuant to Rule 7065 of the Federal Rules of Bankruptcy Procedure and section 105 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et. seq.*, hereby request that this Court enjoin Defendants from declaring or acting on an Event of Default by reason of the maturity and non-

854140_3

payment of the DIP Loan under the debtor-in-possession financing agreement entered into between the Debtors and Defendants until July 31, 2010.

## **INTRODUCTION**

1. The Senior Secured Lenders have attempted to control the Debtors' reorganization process since the bankruptcy petitions were filed. As a condition to providing the Debtors with debtor-in-possession ("DIP") financing, the Senior Secured Lenders originally insisted upon advance approval of any plan proposed by the Debtors. Only after the Debtors obtained a commitment for DIP financing from a third party bank and extensive mediation efforts did the Senior Secured Lenders finally drop that demand and agree to provide non-coercive DIP financing to the Debtors.

2. The Defendants are once again seeking to pervert the reorganization process. As part of the settlement on DIP financing, and after the credit bid issue was explicitly raised by the Debtors' bid procedures motion, the parties agreed to a specific schedule for an auction and confirmation hearing which was embodied in a court approved stipulation. The Debtors at all times complied with this schedule. The schedule would have permitted repayment of the DIP loan well in advance of the maturity date. But, when the District Court reversed this Court's decision on the credit bid issue, the Defendants abandoned the agreed-upon schedule and, over the objection of the Debtors, obtained a stay which prevented the auction from occurring.

3. The Defendants are now threatening to declare an Event of Default under the DIP Agreement when the Debtors are unable to repay the DIP Loan on March 31, 2010, the maturity date. The conduct of the Senior Secured Lenders in obtaining a stay and delaying the agreed-upon schedule for the sale and confirmation process is the exclusive cause of the Debtors' inability to repay the DIP Loan on the Maturity Date.

854140_3

4.  Under these circumstances, this Court should use its authority under Section 105(a) and Bankruptcy Rule 7065 to enjoin the Defendants from declaring an Event of Default in order to protect the Debtors' ability to confirm a plan and to preserve the property of the Debtors' estate.

## BACKGROUND

5.  The relevant background to this Motion is set forth in more fully in the Debtors' Complaint for Declaratory and Injunctive Relief, which is incorporated herein by reference. [See Exhibit "A" hereto].

6.  After extensive negotiations among the Debtors, the Official Committee of Unsecured Creditors ("Committee"), Defendant Citizens Bank of Pennsylvania ("Citizens"), as Agent for the Senior Secured Lenders, and the self-appointed Steering Group of Senior Secured Lenders ("Steering Group")[1], and with the assistance of Judge Fehling, the parties agreed that the Debtors would withdraw their motion to approve a priming DIP loan and instead enter into a DIP agreement with Citizens and certain of the Senior Secured Lenders.

7.  On August 28, 2009, the Debtors entered into a Stipulation and Order (the "Stipulation") resolving various issues, including DIP financing to be provided by Citizens and certain other Senior Secured Lenders.

8.  In addition to addressing DIP financing, the Stipulation set forth a schedule related to the Chapter 11 plan and sale process, including the auction and the confirmation hearing, and provides that **"[n]either the Debtors nor any other party-in-interest in the Bankruptcy Case shall seek further extension of the foregoing dates...."** [Stipulation at ¶ 2; Docket No. 1006; Exhibit "B" hereto (emphasis added)].

---

[1] Citizens and the Steering Group will be collectively referred to as "the Senior Secured Lenders."

854140_3

3

9. In the Stipulation, all parties also agreed that "[t]ime **is of the essence with regard to each date and milestone set forth**" therein, and that the existence of such a timeline "**was a material inducement to the Parties entering into this Stipulation.**" [Stipulation at ¶ 2 (emphasis added)].

10. At the time the Stipulation was agreed to, all parties understood that the Debtors would seek approval of procedures for the sale of certain of the Debtors' assets that expressly provided that the Senior Secured Lenders would not be permitted to credit bid at the auction.

11. On or about September 30, 2009, the Debtors entered into a Debtor-in-Possession Credit and Guaranty Agreement dated as of September 30, 2009 ("DIP Agreement") with Defendant Citizens, as the administrative, collateral and co-syndication agent and lead arranger, and Defendant Wells Fargo Foothill, as co-syndication agent, pursuant to which the Defendants provided the Debtors with DIP financing (the "DIP Loan") on terms and conditions set forth in the DIP Agreement. The Court entered a final Order approving the DIP Agreement on October 2, 2009.

12. In relevant part, the DIP Agreement requires that the Debtors repay the DIP Loan in full, on or before the earliest of (i) March 31, 2010; (ii) if a plan of reorganization has been confirmed by the Bankruptcy Court, the earlier of (a) the effective date of such plan of reorganization, or (b) the 30th day after the date of entry of the confirmation order; (iii) the closing of a sale of substantially all of the equity or assets of the Borrower or any Guarantor; (iv) the date of indefeasible payment in full by Borrower of all Obligations; or (v) upon acceleration of the Loans (the "Maturity Date"). [See DIP Agreement at §1.1 p. 16, §2.11 p. 34, Exhibit "1" to the Declaration of Richard Thayer ("Thayer Decl."), a copy of which is attached hereto as Exhibit "C"].

13. The Debtors agreed to the Maturity Date provisions in reliance upon the Lenders' agreement in the Stipulation regarding dates for the auction and confirmation. [Thayer Decl. ¶ 12].

14. At the time the DIP Agreement was entered into all parties understood that the Debtors would not be in a position to repay the funds lent under the DIP Agreement without proceeds from the auction and sale. [Thayer Decl. ¶ 5]. Consistently, the DIP Agreement, and the budgets provided to the Senior Secured Lenders in accordance with the DIP Agreement, provided for interest only payments with no principal amortization. [Thayer Decl. ¶ 6].

15. Thereafter, in order to accommodate settlement discussions and facilitate an orderly auction and confirmation process, the parties to the Stipulation agreed to a minimal extension of the dates set forth in the Stipulation ("Amended Stipulation"). On October 15, 2009, the Court entered an Order approving the Amended Stipulation and setting a November 18, 2009 auction date and a December 4, 2009 confirmation hearing and approval of the sale. [Docket No. 1278 at 3].

16. The Amended Stipulation embodied a schedule that would still permit the Debtors to complete the confirmation process before the end of 2009 and meet their obligation to repay the DIP Loan through the closing on a sale prior to the DIP Maturity date.

17. At the time of the Order approving the Amended Stipulation, this Court had already denied the Debtors' Motion to Approve (A) Procedures for the Sale of Certain of the Debtors' Assets; (B) Scheduling an Auction; (C) Approving Assumption and Assignment Procedures; (D) Approving Form of Notice; and (E) Granting Related Relief ("Bid Procedures Motion") to the extent it sought to preclude the Senior Secured Lenders from credit bidding at the auction.

854140_3

18. On the same day the Debtors filed the Motion seeking approval of the Amended Stipulation, the Debtors also filed a Notice of Appeal to the District Court seeking reversal of this Court's denial of the Debtors' Bid Procedures Motion to the extent the Bid Procedures did not permit the Senior Secured Lenders to credit bid at the auction.

19. Cognizant of the agreed-upon schedule and the provisions of the DIP Agreement, including the Maturity Date, **the Debtors did not seek to stay or otherwise delay the schedule to accommodate their appeal to the District Court**. Instead, the Debtors requested, and the District Court granted, an expedited appeal **in order not to delay** the sale process.

20. On November 10, 2009, the District Court reversed the Bankruptcy Court's decision on the credit bid issue.

21. With the shoe now on the other foot, and in blatant contradiction of the terms of the Amended Stipulation, the Senior Secured Lenders sought an immediate stay of the auction and sale pending their appeal to the United States Court of Appeals for the Third Circuit ("Credit Bid Appeal").

22. After briefing, the District Court denied the Senior Secured Lenders' motion for a stay on the merits but nonetheless granted a seven-day stay to facilitate consideration by the Third Circuit of the issue of a stay. In denying the stay, the District Court found that the "**other constituencies involved in the underlying bankruptcy case stand to suffer significant injury if the auction is stayed until resolution of the appeal.**" [District Ct. Order Nov. 12, 2009 at 2 (emphasis added)]. In particular, the District Court found that a stay will "**create a long period of uncertainty in the bankruptcy proceedings.**" [Id. (emphasis added)].

23. Again in violation of the terms of the Amended Stipulation, the Senior Secured Lenders requested a stay of the auction and sale in the Third Circuit. The Debtors opposed this

854140_3

stay and argued that the schedule originally agreed to by the parties should govern and that, among other things, a stay would create a significant problem in the case because of the impending maturity of the DIP Loan. The Third Circuit nonetheless granted a stay until the scheduled argument on December 15, 2009.

24. The entry of the stay order **at the request of the Senior Secured Lenders** made it impossible for a plan to be confirmed and a sale closed before the end of the year. Although the stay granted by the Third Circuit expired on December 15, 2009, all parties have treated the auction and sale as effectively stayed pending the decision by the Third Circuit.

25. Accordingly, on November 17, 2009, the Debtors filed a motion advising this Court of the developments in the Credit Bid Appeal and requesting that all dates relating to the auction, the sale and confirmation (the bid deadline, the auction date, the balloting and objection deadlines and the confirmation hearing) be continued generally until after the Third Circuit decides the appeal.

26. Because of the delay in obtaining a decision from the Third Circuit (an event not within the Debtors' control) and because of the stay obtained by the Senior Secured Lenders, the Debtors have been unable to proceed with an auction, have been unable to proceed toward confirmation of their proposed Chapter 11 plan, and have remained in bankruptcy longer than anticipated by the parties at the time that the DIP Agreement was negotiated and executed. As a result, Chapter 11 related expenses have been paid, depleting the Debtors' cash resources, and the case remains stalled by the Senior Secured Lenders. Solely because of the delay in the confirmation process caused by the Senior Secured Lenders, the Debtors will not be able to repay the DIP Loan before the Maturity Date. [Thayer Decl. ¶ 10].

27. The DIP Agreement provides that, if the DIP Loan is not repaid by March 31, 2010, an Event of Default will occur. The DIP Agreement further provides that, upon an Event of Default, the "Administrative Agent may, and at the request of the Requisite Lenders, shall cause the Collateral Agent to enforce any and all Liens and securities interests created pursuant to the Collateral Documents and, upon five Business Day's notice to the Borrower and the Committee, realize on any or all Collateral without the necessity of obtaining further relief or order from the Bankruptcy Court." [Thayer Decl. ¶ 11; DIP Agreement at §8.1 p.85].

28. The Defendants refuse to extend the Maturity Date in retaliation for the Debtors' efforts to investigate the illegal recording of a pre-bankruptcy meeting between representatives of the Debtors and its consequences. [See Exhibit "A" hereto, Complaint for Declaratory and Injunctive Relief, at ¶¶ 48-82].

29. Given the Defendants' refusal to extend the Maturity Date without additional and unacceptable conditions, the Defendants could exercise the above remedies if the DIP Loan is not repaid by March 31, 2010. [Thayer Decl. ¶ 13]. The Debtors have worked strenuously over the past few months to achieve a fair and competitive auction that will maximize value for all constituencies. [Thayer Decl. ¶ 16]. Execution on the Debtors' collateral by the Defendants will derail the Debtors' reorganization and, as predicted by the Debtors in their opposition to the Senior Secured Lenders' stay motion in the Third Circuit, result in a catastrophe for the creditors, employees and the community as a whole. [Thayer Decl. ¶ 15].

## ARGUMENT

30. The Debtors seek to enjoin the Defendants from declaring an Event of Default under the DIP Agreement until July 31, 2010 so that the Debtors can complete the auction, sale and confirmation process.

31. This Court has authority to issue such an injunction pursuant to its equitable powers under Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 7065.

### Section 105(a) and Rule 7065 authorize the injunctive relief sought.

32. Both Section 105(a) and Bankruptcy Rule 7065 provide authority to this Court to issue the injunctive relief requested by the Debtors.

33. Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Relief under section 105 of the Bankruptcy Code is particularly appropriate in a chapter 11 case when necessary to protect a debtor's ability to effectively confirm a plan and to preserve the property of a debtors' estate.

34. Federal Rule of Bankruptcy Procedure 7065 incorporates the traditional injunction standard of Federal Rule of Civil Procedure 65 in adversary proceedings.

35. The factors to be considered in determining whether a preliminary injunction should be issued pursuant to Section 105(a) or Rule 7065 are: (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest. In re Philadelphia Newspapers, LLC., Civ. A. No. 09-4065, 2010 WL 94564 at *6 (E.D. Pa. Jan. 11, 2010) (discussing standard under Section 105(a)); In re MGL Corp., No.

854140_3

9

00-10804, 2001 WL 204729 at *4 (Bankr. E.D. Pa. Feb. 5, 2001) (discussing standard under Rule 7065).

36. When considering an injunction under Section 105(a), however, the "concept of a reasonable likelihood of success under the first prong is interpreted by bankruptcy courts as the equivalent of the debtor's ability to successfully reorganize." In re Philadelphia Newspapers, LLC., 2010 WL 94564 at *6.

37. The moving party does not have to conclusively demonstrate all factors but rather all factors should favor preliminary relief before the injunction will issue. In re MGL Corp., 2001 WL 204729 at *4.

### The Debtors have a reasonable probability of successful reorganization.

38. The Court has previously found that the Debtors had a strong likelihood of successful reorganization, a determination that was upheld by the District Court on appeal. In re Philadelphia Newspapers, LLC, 407 B.R. 606, 617-18 (E.D.Pa. 2009).

39. Since the Court's decision, the prospect of the Debtors successfully emerging from bankruptcy has increased. The Debtors have filed their plan and have an approved disclosure statement. During the unfortunate delay in proceedings caused by the Senior Secured Lenders' breach of the Amended Stipulation and appeal to the Third Circuit, the Debtors and their professionals continued their efforts to ensure a fair and competitive auction.

40. Now that the Third Circuit has denied the Senior Secured Lenders' appeal on the credit bid issue, the auction will proceed pursuant to the Debtors' plan on an equal playing field on April 27, 2010 by agreement of the parties, and a confirmation hearing will occur a reasonable time thereafter.

41. But for the Senior Secured Lenders' breach of the agreed-upon schedule by seeking a stay in the Third Circuit, the sale and confirmation process would have concluded December 4, 2009 and the Debtors would have been able to successfully reorganize and repay the DIP Loan by the Maturity Date.

42. Therefore, the Debtors have demonstrated a reasonable likelihood of successfully reorganizing under the first prong of the injunction standard under Section 105(a).

### In the alternative, the Debtors have a reasonable probability of success on the merits of their declaratory judgment claim.

43. In addition to establishing a reasonable probability of a successful reorganization, the Debtors can also demonstrate that an injunction is appropriate under Rule 7065 because there is a reasonable likelihood of success on the Debtors' Declaratory Judgment claim.

44. The Debtors have brought a claim pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, for a determination that the Defendants are equitably estopped from declaring an Event of Default because the Debtors' performance was prevented by the Senior Secured Lenders, including the Defendants.

45. The DIP Agreement is governed by Pennsylvania law.

46. It is well-settled under Pennsylvania law that the conduct of one party that prevents the other from performing is an excuse for nonperformance. Onal v. BP Amoco Corp., 275 F. Supp. 2d 650, 666-67 (E.D. Pa. 2003). A party cannot "take advantage of an insurmountable obstacle placed, by himself, in the path of the other party's adherence to an agreement. By preventing performance he also excuses it." Craig Coal Min. Co. v. Romani, 513 A.2d 437, 440 (Pa. Super. 1986); Philadelphia Television Network, Inc. v. Reading Broadcasting, Inc., No. 1663 Aug. Term 2001, 2005 WL 1668346 at *23 (Phila. Comm. Pl. July 14, 2005).

47. All parties understood at the time the DIP Agreement was entered into that the Debtors would not be able to repay the DIP Loan absent a sale of their assets. Consistently, the parties agreed to be bound by a sale and confirmation schedule that would enable the Debtors to repay the DIP Loan on or before the Maturity Date.

48. But for the conduct of the Senior Secured Lenders, including the Defendants, in breaching the schedule in the Amended Stipulation and obtaining a delay of the sale and confirmation schedule, the Debtors would have conducted the sale and been able to repay the DIP Loan.

49. Because the Defendants' own conduct prevented the Debtors from being able to repay the DIP Loan, the Debtors' performance must be excused.

50. The Debtors have, therefore, demonstrated a likelihood of success on the merits of their Declaratory Judgment claim.

### The Debtors will suffer irreparable injury if injunctive relief is not granted.

51. If injunctive relief is not granted under Section 105(a) or Rule 7065, the Defendants will be able to declare an Event of Default on March 31, 2010 and "realize on any and all Collateral without the necessity of obtaining further relief or order from the Bankruptcy Court." [Thayer Decl. ¶ 11; DIP Agreement, §8.1, p. 85].

52. Such actions by the Defendants would upend the reorganization efforts of the Debtors to the detriment of all constituencies including other creditors, employees and the community, and cause irreparable harm.

### The Defendants will not suffer harm if a stay is granted.

53. The Defendants will not suffer "substantial harm" if injunctive relief is granted.

54. The Defendants made a strategic decision to ignore the agreed-upon schedule and seek a stay of the sale and confirmation process, knowing that the Debtors would not be able to repay the DIP Loan if that process were delayed for any significant length of time.

55. When the Debtors raised in the District Court the harm that the Debtors would suffer as a result of a delay in the agreed-upon schedule, counsel for the Steering Group belittled those concerns because the $15 million DIP Loan was "our money" and characterized the Debtors' concerns as a "parade of horribles."

56. In opposing the stay motion in the Third Circuit, the Debtors again specifically referenced the possibility that the Debtors might be unable to repay the DIP Loan if the sale and confirmation process were delayed. Knowing this risk, the Senior Secured Lenders, including the Defendants, nonetheless sought and obtained a stay from the Third Circuit, which negated all of the dates that the parties had agreed upon.

57. Accordingly, any harm to the Defendants resulting from the Debtors' inability to repay the DIP Loan by March 31, 2010 is a direct consequence of the Defendants' own strategic decisions.

58. The Debtors have also offered to obtain a new DIP loan from a third party to repay the DIP Loan by the Maturity Date but the Defendants have rejected that offer.

59. Moreover, the minimal delay in repayment of the DIP Loan pales in comparison to the irreparable harm that would be suffered by the Debtors if their efforts to reorganize are thwarted by the Defendants.

### The public interest favors injunctive relief.

60. Finally, granting the injunction would serve the public interest by enabling the Debtors to continue the reorganization process for the benefit of all constituencies. In

determining whether the public interest element is satisfied, the court must balance the public interest in successful bankruptcy reorganizations with other competing social interests. <u>Official Comm. of Unsecured Creditors v. Bechtle</u> (<u>In re LaBrum & Doak, LLP</u>), 237 B.R. 275, 307 (Bankr. E.D. Pa. 1999). Here, the ability to implement a successful plan of reorganization clearly serves the interests of the Debtors' creditors and those of the employees and vendors of the Debtors.

61. The injunction also is in the public interest because the public has an interest in seeing that illegal conduct is not covered up. The Defendants should not be permitted to force the Debtors to further ignore the illegal taping as a condition of extending the Maturity Date.

## CONCLUSION

62. This Court has the authority to issue the injunctive relief requested by the Debtors. The overriding consideration of Section 105(a) and Bankruptcy Rule 7065 is equity.

63. It would be patently unfair for this Court to allow the Defendants to derail the reorganization process because of the Debtors' non-payment of the DIP Loan when the Defendants themselves were the exclusive cause of the non-payment.

64. Accordingly, for all of the foregoing reasons, the Debtors respectfully request that this Court enjoin the Defendants from declaring or acting on an Event of Default by reason of the maturity and non-payment of the DIP Loan under the DIP Agreement until July 31, 2010.

854140_3

Dated: March 23, 2010
Philadelphia, Pennsylvania

/s/ Lawrence G. McMichael
**DILWORTH PAXSON LLP**
Lawrence G. McMichael
Christie Callahan Comerford
Catherine G. Pappas
1500 Market St., Suite 3500E
Philadelphia, PA 19102
Telephone: (215) 575-7000
Facsimile: (215) 575-7200

-and-

**PROSKAUER ROSE LLP**
Mark K. Thomas
Paul V. Possinger
Peter J. Young
Three First National Plaza
70 West Madison, Suite 3800
Chicago, Illinois 60602-4342
Telephone: (312) 962-3550
Facsimile: (312) 962-3551

*Co-counsel for the Debtors*