**EXHIBIT B**

[Stipulation]

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Philadelphia Newspapers, LLC *et al.*, | ) | Case No. 09-11204 (SR) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

## STIPULATION AND ORDER

THIS STIPULATION AND ORDER (the "Stipulation") is made and entered into as of

the ___ day of August, 2009, between (i) Philadelphia Newspapers, LLC and its affiliates,

debtors and debtors-in-possession (collectively, the "Debtors") in the above-captioned, jointly

administered, bankruptcy cases (collectively, the "Bankruptcy Case"), (ii) Citizens Bank of

Pennsylvania, in its capacity as administrative agent and collateral agent (in such capacities, the

"Prepetition Agent") under that certain Credit and Guaranty Agreement, dated June 29, 2006,

with the Debtors, and certain other lender parties (collectively, the "Prepetition Secured

Lenders") in the original principal amount of $345,000,000 (as amended from time to time, the

"Prepetition Credit Agreement"), (iii) the Steering Group of Prepetition Secured Lenders (the

"Steering Group"), and (iv) the Official Committee of Unsecured Creditors (the "Committee"),

(the Debtors, Prepetition Agent, Steering Group, and Committee are collectively referred to as

the "Parties").

## BACKGROUND

A.    On February 22, 2009 (the "Petition Date"), each of the Debtors, other than

Philadelphia Media Holdings, LLC ("PMH"), filed a voluntary petition for relief in the United

822392_4

States Bankruptcy Court for the Eastern District of Pennsylvania (the "Bankruptcy Court") under

chapter 11 of title 11 of the United States Bankruptcy Code, 11 U.S.C. §101, et. seq. (the

"Bankruptcy Code"). On June 10, 2009, PMH filed a voluntary petition for relief under chapter

11 of the Bankruptcy Code and is being jointly administered with these chapter 11 cases. The

Debtors are operating their business and managing their property as debtors in possession

pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On March 2, 2009, the Office of

the United States Trustee appointed the Committee in the Bankruptcy Case.

      B.      On or about June 29, 2006, Citizens and the Debtors, other than PMH and

Philadelphia Media, LLC, which have no material assets, entered into the Prepetition Credit

Agreement and related documents (collectively, the "Loan Documents"). As of the Petition

Date, $318,763,725 was outstanding under the Prepetition Credit Agreement (which amount

includes principal and interest accrued through the Petition Date on the term loan and revolving

loan commitments, interest rate swap obligations, and outstanding letters of credit, which letters

of credit are subject to reimbursement by the revolving lenders, but excluding other charges and

amounts that may be due or become due under the Loan Documents) (the "Indebtedness").

      C.      The Debtors have acknowledged and agreed that the Indebtedness under the Loan

Documents are secured, on an equal and ratable basis, by a first priority, properly perfected,

security interest in and lien upon all of the Debtors' assets (the "Collateral"), including the

Debtors' cash and cash equivalents (the "Cash Collateral"). The Committee has investigated the

amount of the Indebtedness and the validity, perfection, extent or priority of liens and security

interests of the Prepetition Senior Lenders in the Collateral (the "Lien Investigation"). The

Committee, if appropriate, may commence an action or otherwise challenge the amount of the

Indebtedness and/or the validity, perfection, extent or priority of security interests in the

- 2 -

WM01/

822392_4

Collateral (collectively, an "Action") on behalf of the Debtors' estates with respect to the Collateral. The Committee's period to commence an Action shall terminate, upon written notice (the "Action Notice") from Agent to Committee's counsel of record, on the last day of the month which includes the date that is fifteen (15) days after the date of the Action Notice. The Prepetition Senior Lenders and Steering Group have reserved all rights to object to fees incurred to commence or pursue an Action or other claim or cause of action against the Prepetition Senior Lenders.

*The Cash Collateral Motion and Amended DIP Motion*

D.      On or about February 23, 2009, the Debtors filed their Motion for Interim and Final Orders (A) Authorizing the Debtors to Use Cash Collateral of Existing Secured Lenders and Granting Adequate Protection for Use and (B) Prescribing Form and Manner of Notice and Setting the Time for the Final Hearing (Docket No. 21) (the "Cash Collateral Motion"), seeking authority to use Cash Collateral.

E.      On or about February 23, 2009, the Debtors filed their Motion for Interim and Final Orders: (A) Authorizing Debtors to Obtain Postpetition Financing, (B) Granting Liens and Superpriority Claims, (C) Authorizing Use of Cash Collateral, (D) Granting Adequate Protection to Prepetition Secured Lenders and (E) Scheduling a Final Hearing (Docket No. 22) (the "Initial DIP Motion"). On or about February 24, 2009, the Prepetition Agent filed its objection to the Cash Collateral Motion (Docket No. 34).

F.      On or about August 4, 2009, the Debtors filed their Amended Motion for Entry of an Order: (A) Authorizing the Debtors to Obtain Postpetition Financing, (B) Granting Liens and Superpriority Claims, (C) Authorizing Use of Cash Collateral, and (D) Granting Adequate Protection to Prepetition Senior Lenders (Docket No. 849) (the "Amended DIP Motion"). The

- 3 -

Amended DIP Motion amended and superseded the Initial DIP Motion. On or about August 19,

2009, the Prepetition Agent and Steering Group filed their Joint Objection to the Amended DIP

Motion and Cash Collateral Motion (Docket No. 935). On or about August 20, 2009, the

Debtors filed their Reply in support of the Amended DIP Motion (Docket No. 949).

     G.     A hearing on the Amended DIP Motion and Cash Collateral Motion is presently

scheduled for August 28, 2009.

*The Special Counsel Reconsideration Motion*

     H.     On or about April 8, 2009, the Debtors filed their Application of the Debtors for

an Order Authorizing Employment and Retention of Elliott Greenleaf & Siedzikowski, P.C. as

Special Counsel for the Debtors and Debtors-in-Possession (Docket No. 323) (the "Special

Counsel Application") seeking authority to retain special counsel to, among other things,

investigate the alleged taping of a meeting on November 17, 2008 (the "Taping Incident"). The

Prepetition Agent and Steering Group filed their Joint Objection to the Special Counsel

Application (Docket No. 378) and the Committee filed its Objection to the Special Counsel

Application (Docket No. 374) . On May 15, 2009, the Bankruptcy Court entered an Order

(Docket No. 482) denying the Special Counsel Application and entered its Memorandum Opinion

Supporting April 20, 2009 Ruling, Which Denied Debtors' Application To Employ Elliott

Greenleaf & Siedzikowski, P.C Without Prejudice (Docket No. 481)(collectively, the "Special

Counsel Order"). The Debtors appealed the Bankruptcy Court's denial of the Special Counsel

Application and, by Order entered on or about June 10, 2009, the United States District Court for

the Eastern District of Pennsylvania affirmed in part and reversed and remanded in part the

Special Counsel Order.

WM01/

822392_4

I.    On or about July 20, 2009, the Debtors filed their Motion for Reconsideration of this Court's April 20, 2009 Order Denying Debtors' Request for its Special Counsel to Conduct an Investigation (Docket No. 769) ("Special Counsel Reconsideration Motion").  On or about August 17, 2009, the Prepetition Agent and the Steering Group filed their Objection to the Special Counsel Reconsideration Motion (Docket No. 921) and the Committee filed its Response to the Motion (Docket No. 925).  The Bankruptcy Court held a hearing on the Special Counsel Reconsideration Motion on August 18, 2009 and has taken such Motion under advisement.

*The RFB Fee Reconsideration Motion*

J.    On or about July 30, 2009, the Debtors filed their Motion for the Entry of an Order Pursuant to 11 U.S.C. §§ 105 and 363(B) Authorizing Payment of Fees and Expenses for Prospective Debtor-In-Possession Financing (Docket No. 822) (the "RFB Fee Motion") seeking authority to pay $300,000 of cash of PMH to Republic First Bank ("RFB") to reimburse expenses of RFB related to due diligence for possible debtor-in-possession financing.  On or about August 7, 2009, the Prepetition Agent and Steering Group filed their Objection to the RFB Fee Motion (Docket No. 858).  On August 11, 2009, the Bankruptcy Court held a hearing on the RFB Motion and approved payment of up to $100,000 of PMH's cash to RFB.

K.    On or about August 21, 2009, the Debtors filed their Motion for Reconsideration of the Cap Imposed By This Court's August 11, 2009 Order Authorizing Payment of Fees and Expenses for Prospective Debtor-In-Possession Financing (Docket No. 954)(the "RFB Fee Reconsideration Motion").  On or about August 24, 2009, the Committee filed its Objection (Docket No. 963) and the Prepetition Agent and Steering Group filed their Joint Objection (Docket No. 967) to the RFB Fee Reconsideration Motion.  A hearing on the RFB Reconsideration Motion is presently scheduled for August 28, 2009.

WM01/

822392_4

*The Exclusivity Motions and Union Motion*

    L.    On or about August 4, 2009, the Debtors filed their Motion for an Order Pursuant

to 11 U.S.C. § 1121(d) Extending Debtors' Exclusive Periods Within Which to File a Chapter 11

Plan and Solicit Acceptances Thereto (Docket No. 844) (the "Motion to Extend Exclusivity").

    M.    On or about August 10, 2009, the Prepetition Agent and Steering Group filed their

Motion of the Steering Group of Prepetition Secured Lenders, and Citizens Bank of

Pennsylvania, as Agent for the Prepetition Secured Lenders, for an Order (A) Pursuant to Section

1121(d), Terminating the Debtors Exclusive Periods Within Which to File a Chapter 11 Plan and

Solicit Acceptances Thereto, and (B) Granting Leave to File the Disclosure Statement

Subsequent to the Filing of the Plan and, if Necessary, Commence Discovery in Connection

Therewith, and Objection to Debtors Motion for an Order Pursuant to 11 U.S.C. Section 1121(d)

Extending Debtors Exclusive Periods Within Which to File a Chapter 11 Plan and Solicit

Acceptances Thereto (Docket No. 895) (the "Motion to Terminate Exclusivity") objecting to the

Motion to Extend Exclusivity and asking the Bankruptcy Court, among other things, to terminate

exclusivity. On August 24, 2009, the Committee filed its Objection to the Motion to Extend

Exclusivity and Joinder in the Motion to Terminate Exclusivity (Docket No. 961).

    N.    On or about August 10, 2009, the Prepetition Agent and Steering Group filed their

Motion for an Order Pursuant to Section 105(A), Confirming Their Authority to Engage In

Negotiations With the Debtors Unions Regarding the Terms of the Collective Bargaining

Agreements (Docket No. 892) (the "Union Motion") seeking authority to have discussions

regarding collective bargaining agreements with any union of the debtors so willing. On or

about August 24, 2009, the Committee filed its Reply to the Union Motion (Docket No. 962).

WM01/

822392_4

O.    On or about August 24, 2009, the Debtors filed their Omnibus Objection and

Response to the Motion to Terminate Exclusivity and the Union Motion (Docket No. 966).

P.    A hearing on the Motion to Extend Exclusivity, the Motion to Terminate

Exclusivity and the Union Motion is scheduled for August 28, 2009.

*The Debtors' Chapter 11 Plan and Sale of Substantially All of Their Assets*

Q.    On or about August 21, 2009, the Debtors filed the Debtors' Joint Chapter 11 Plan

as of August 20, 2009 (Docket No. 947) (the "Chapter 11 Plan") and related Disclosure

Statement (Docket No. 946) (the "Disclosure Statement").  Pursuant to the Chapter 11 Plan, the

Debtors' propose to sell (the "Sale") substantially all of their assets to Philly Papers, LLC or

other bidder submitting a higher or better offer (the "Successful Bidder").

R.    On or about August 21, 2009, the Debtors filed their Motion for Entry of an Order

Approving (I) the Disclosure Statement; (II) Procedures for the Solicitation and Tabulation of

Votes to Accept or Reject the Debtors' Chapter 11 Plan; and (III) Related Notice and Objection

Procedures (Docket No. 948) (the "Disclosure Statement Motion").

S.    The Debtors have stated that they intend to file a sale and bid procedures motion

(the "Bid Procedures Motion") related to the Sale.

T.    The Debtors have requested the following schedule related to the Chapter 11 Plan

and the Sale:

(i)    September 15, 2009: Hearing regarding Bid Procedures

Motion;

(ii)    September 29, 2009: Hearing regarding Disclosure

Statement Motion;

- 7 -

WM01/

822392_4

(iii)     October 20, 2009: Deadline for submission of bids related

to the Sale;

(iv)     October 22, 2009: Auction related to the Sale;

(v)     November 2, 2009: Hearing regarding confirmation of the

Chapter 11 Plan and approval of the Sale to the Successful

Bidder.

U.     The Parties have entered into mediation and negotiations to resolve certain of

their disputes related to certain of the Motions referenced above, and have agreed to resolve such

disputes, as provided by the terms and conditions of this Stipulation, all subject to the approval

of this Stipulation by order of the Bankruptcy Court in the Bankruptcy Case.

## AGREEMENT

NOW, THEREFORE, the Parties, incorporating the foregoing Background by reference

as if fully set forth herein, and constituting findings of fact by the Court, hereby agree as follows:

1.     The Cash Collateral Motion and Amended DIP Motion.

a)     Citizens Bank of Pennsylvania, as post-petition agent ("Post-

Petition Agent") for itself and certain of the Prepetition Secured Lenders (the "Creditors DIP

Lenders"), shall make available to the Debtors, debtor-in-possession financing (the "Creditors

DIP") in the principal amount of $15 million on substantially the terms and conditions set forth

in the term sheet attached hereto as **Exhibit A** (the "Creditors DIP Commitment"), subject to (a)

approval of the Bankruptcy Court, upon notice, in a form of approval order acceptable to the

Post-Petition Agent (the "DIP Order") and (b) execution of a Credit Agreement and related

documents acceptable to the Post-Petition Agent under the Creditors DIP (the "DIP Loan

Documents").

- 8 -

WM01/

822392_4

b)        Subject to the entry of a DIP Order (as defined below), the

Prepetition Agent and Steering Group consent to the Debtors' use of Cash Collateral through and

including December 31, 2009, on terms substantially similar to the prior cash collateral

stipulations.

c)        The proceeds of the Creditors DIP shall be used in accordance with

the DIP Loan Documents; provided, however, the amount of Cash Collateral and proceeds of the

Creditors DIP, in the aggregate, that may be used by (a) the Debtors and their counsel, experts

and advisors, to propose, solicit in an authorized manner support for, and prosecute and litigate

confirmation of the Chapter 11 Plan ("Debtors' Plan Expenses") shall be limited to $250,000

(expressly excluding flat monthly fees of Sonenshine Partners LLC pursuant to prior orders of

the Bankruptcy Court and fees and expenses directly related to the Sale and the Sale process,

including approval of bidding procedures, responding to due diligence requests, reviewing,

meeting, and negotiating with potential bidders, or otherwise taking actions in furtherance of the

bidding procedures, and any auction), (b) the Prepetition Agent, Steering Group and their

respective counsel, experts and advisors to object to or contest confirmation of the Chapter 11

Plan ("Creditors' Plan Expenses") shall be limited to $250,000 (other than flat monthly fees of

The Blackstone Group pursuant to prior orders of the Bankruptcy Court and fees and expenses

directly related to the Sale and the Sale process, including, without limitation, bidding

procedures, preparation and negotiation of an asset purchase agreement, formation and

governance documents and structure of one or more entities for purposes of bidding related to

the Sale, due diligence related to the Sale and any auction) and (c) the Committee, its counsel,

experts and advisors related to confirmation of the Chapter 11 Plan process (the "Committee's

Plan Expenses") shall be limited to $250,000 (other than fees and expenses directly related to the

- 9 -

Sale and Sale process). Further, no Cash Collateral or proceeds of the Creditors DIP shall be used by the Debtors to pay outside costs and expenses of the "Keep It Local" campaign or other public relations campaigns relating to the Chapter 11 Plan (collectively, the "Publicity Campaign"), including, (i) placement of advertisements in any publication not owned by the Debtors, and (ii) on-line advertising on any website not owned by the Debtors. All Parties reserve all of their rights and defenses with respect to the propriety or impropriety or any other issue respecting the Debtors' and any other party's action in connection with the Publicity Campaign.

d)       To the extent either the Debtors' Plan Expenses, the Creditors' Plan Expenses, or the Committee's Plan Expenses in excess of $250,000 are approved and allowed as administrative expense claims in the Bankruptcy Case pursuant to 11 U.S.C. §503(b), the other of the Debtors' Plan Expenses, the Creditors' Plan Expenses, or the Committee's Plan Expenses as the case may be, shall also be deemed approved and allowed as administrative expense claims pursuant to 11 U.S.C. §503(b), and with respect to the Creditors' Plan Expenses, such amounts shall be deemed to be allowed under section 503(b)(3)(D) of the Bankruptcy Code.

e)       The Debtors' Amended DIP Motion shall be deemed withdrawn upon the entry of the DIP Order.

2.       The Exclusivity Motions. The Debtors' exclusive periods (the "Exclusive Period") to file a plan of reorganization and to solicit acceptance of a Chapter 11 Plan is extended to, and shall irrevocably terminate upon, the earliest to occur of (i) November 2, 2009, (ii) failure of the Debtors to file the Bid Procedures Motion, obtain a hearing date on such motion, or complete their case in support of such motion on or before September 15, 2009, (iii) failure of the Debtors to complete their case in support of approval of the Disclosure Statement

- 10 -

WM01/

822392_4

on or before September 29, 2009, (iv) failure of the Debtors to hold an auction related to the Sale

and declare a Successful Bidder on or before October 22, 2009, (v) the Debtors withdraw or

make an amendment to or seek authority to make an amendment to the Chapter 11 Plan, which

amendment materially alters the sale process of the Chapter 11 Plan, or the treatment of the

claims of the Prepetition Secured Lenders, without the Prepetition Agent's, Post Petition

Agent's, Requisite Lenders' (as defined in the Loan Documents) and the Creditors' Committee's

prior written consent, and (vi) the Debtors seek to extend any of the dates in (i), (ii), (iii), or (iv)

above, without the Prepetition Agent's, Post-Petition Agent's, Requisite Lenders' and the

Creditors' Committee's prior written consent, which consent may be granted or withheld in each

such party's absolute discretion.  Neither the Debtors nor any other party-in-in interest in the

Bankruptcy Case shall seek any further extension of the foregoing dates or reconsideration of

such date or matter.  Time is of the essence with regard to each date and milestone set forth in

this paragraph and was a material inducement to the Parties entering into this Stipulation, and

under no circumstances shall the dates or events provided by this Stipulation that result in

termination of exclusivity be waived or extended except as expressly provided by this

Stipulation.  Notwithstanding the foregoing, the dates set forth in (i), (ii), (iii), and (iv) above

may be extended if the schedule is delayed due to a force majeure,  a request by the Prepetition

Agent, Steering Group, Prepetition Secured Lenders, or the Committee, or if the Court, *sua*

*sponte*, changes the applicable hearing dates due to a change in the Court's calendar, with such

extension to be no longer than the number of days of the delay.

> 3.    The Union Motion.

> a)    The Prepetition Agent and the Steering Group's Union Motion

shall be deemed withdrawn.  The Prepetition Agent and the Steering Group and their respective

- 11 -

professionals and representatives may enter into discussions with unions representing the

Debtors' employees and engage in negotiations regarding the terms of collective bargaining

agreements for such union employees that will be implemented if an entity controlled by the

Prepetition Secured Lenders acquires a majority of the Debtors' business, as follows:

> (i)     With any union that first contacts the Prepetition Agent or
>
> the Steering Group or their respective professionals or representatives, upon being
>
> contacted by such union; and

> (ii)     With any other union that wishes to engage in discussions
>
> with the Prepetition Agent and the Steering Group or their respective
>
> professionals or representatives, upon entry of an order by the Bankruptcy Court
>
> granting the Bid Procedures Motion.

> b)     Any entity formed by the Prepetition Agent or the Prepetition

Secured Lenders or any subgroup of the Prepetition Secured Lenders for the purpose of

submitting a bid related to the Sale, may enter into discussions with unions representing the

Debtors' employees who wish to engage in discussions with the Prepetition Agent, the

Prepetition Secured Lenders, or any sub-group of the Prepetition Secured Lenders with regard to

the terms of collective bargaining agreements for such union employees that will be

implemented if such entity acquires the majority of the Debtors' business, upon (i) entry of an

order by the Bankruptcy Court granting the Bid Procedures Motion and (ii) provision of

reasonable evidence to the Debtors of such entity's financial ability to close on the Sale if it is

declared the Successful Bidder and is approved by the Bankruptcy Court. Evidence of such an

entity's ability to close on the Sale would include, without limitation, (x) such entity's ability to

credit bid (if allowed by the Court) one or more Prepetition Secured Lenders' share of the

- 12 -

Indebtedness, (y) evidence of a commitment for exit financing in an amount not less than $25

million, and (z) such other requirements as may be ordered by the Court.

c)      Any bidder (including the entities described in paragraph 2(b)

above) that is qualified to submit a bid under an order approving the Bid Procedures Motion, will

be entitled to engage in negotiations regarding the terms of collective bargaining agreements for

such union employees that will be implemented if such bidder acquires the Debtors' business.

d)      Philly Papers, LLC and any other person, other than the Debtors,

shall not enter into discussions with unions representing the Debtors' employees with regard to

the terms of collective bargaining agreements until the Bankruptcy Court enters an order

granting the Bid Procedures Motion.  The Prepetition Agent and Steering Group may

periodically contact counsel for the Council of Unions (the umbrella organization for all unions

representing the Debtors' employees) to confirm compliance with this subparagraph.

e)      The Prepetition Agent, the Steering Group, and the Committee

may contact, obtain information regarding pension plan terms and Debtors' liabilities from, and

enter into discussions with the administrator(s) ("Pension Plan Administrators") of pension plans

in which one or more of the Debtors' participate, including, without limitation, multi-employer

pension plans.  The Debtors shall use commercially reasonable efforts to facilitate access for the

Prepetition Agent, the Steering Group, and the Committee to the Pension Plan Administrators

and shall provide to the Prepetition Agent, Steering Group, and the Committee to the extent not

previously provided, copies of documents related to and analysis of Debtors' pension plan

liabilities, except to the extent that any such document or analysis is subject to an applicable

privilege.

- 13 -

f)      The Debtors, the Prepetition Agent, Steering Group, and the Committee shall promptly inform each other of, and keep each other updated regarding, the details of discussions and/or negotiations with and information received from the Debtors' unions and Pension Plan Administrators.

4.      The Special Counsel Reconsideration Motion.

a)      The Parties shall jointly request that the Bankruptcy Court put the Special Counsel Reconsideration Motion in civil abeyance and not rule on such Motion prior to the earlier date of (i) January 2, 2010 and (ii) such time as all indebtedness under the Creditors DIP is paid in full.  Upon approval of this Stipulation by the Bankruptcy Court, the Special Counsel Reconsideration Motion shall be deemed to be in abeyance.

b)      Any investigation of the Taping Incident and consideration of claims, if any, arising therefrom, whether by the Committee, the Debtors, the Debtors' employees and managers, Brian Tierney, or counsel to any of the foregoing, shall be suspended until the earlier of (i) January 2, 2010 and (ii) such time as all indebtedness under the Creditors DIP is paid in full.  The Prepetition Agent and Steering Group shall retain and preserve all documents and electronically stored information, of the type subject to discovery under the terms of Federal Rule of Civil Procedure 34, which refer, relate to or pertain to any of the claims, allegations or assertions made by the Debtors in support of their efforts to retain Special Counsel in these chapter 11 cases, or which refer, relate to or pertain to any matters addressed in the investigation conducted by counsel for the Committee.

c)      None of the Committee, Prepetition Agent, Steering Group and Debtors shall contact any public official, government employee or any other person requesting,

- 14 -

WM01/

822392_4

suggesting or encouraging such official, government employee or other person to make inquiries
or conduct an investigation into the Taping Incident.

        d)      All Parties will use their best efforts to encourage any third parties
to postpone any investigation so as to enable all Parties to dedicate their resources to Plan
confirmation.

        5.      <u>The RFB Fee Reconsideration Motion.</u>

        a)      Upon approval of this Stipulation by the Bankruptcy Court, the
RFB Fee Reconsideration Motion shall be deemed withdrawn. RFB and Tennenbaum Capital
Partners, LLC may file a motion and seek allowance of an administrative expense claim (in
addition to the $100,000 payment to RFB already approved by the Bankruptcy Court). All
Parties and other parties-in-interest in the Bankruptcy Case reserve their rights to object to any
such request for allowance of administrative expense claim filed by RFB.

        b)      The Debtors shall immediately inform RFB to cease all
underwriting, due diligence, drafting of documents and other actions related to possible debtor-
in-possession financing for the Debtors.

        6.      <u>Monitoring of Sale Process.</u> ~~The United States Trustee's Official~~ or such
~~Any~~ person that is mutually acceptable to the Parties or appointed by the Court (the "<u>Monitor</u>"),
shall monitor the Sale process, including, without limitation, due diligence investigations,
Debtors' evaluation and determination of "Qualified Bidders", Debtors' evaluation and
comparison of bidders, bids and bid terms, Debtors' determination of the highest and best bid
during the Sale process and auction, Debtors' determination and declaration of the Successful
Bidder and all other aspects of the Sale and interaction with bidders and prospective bidders.
The Debtors shall keep the Monitor fully and promptly informed of all matters related to the

- 15 -

WM01/

822392_4

Sale, including, without limitation, the foregoing matters. The Monitor shall have free and complete access to all documents and information related in any way to the Sale process, including, without limitation, all documents, correspondence, memoranda, promotional materials, and bid evaluation information and materials and shall have access to the Debtors' management and employees for purposes of obtaining information related to the Sale and Sale process. The Debtors shall promptly provide the Monitor all information requested by it related to the Sale and Sale process.

7.    Reservation of Rights. The Prepetition Agent, Postpetition Agent, Steering Group, and Committee reserve and by entering into this Stipulation do not waive any objections any of the foregoing may assert to the Bid Procedures Motion, Disclosure Statement Motion, Special Counsel Reconsideration Motion, fee applications, approval of the Sale and/or confirmation of the Chapter 11 Plan.

8.    Bankruptcy Court Approval. The Debtors shall take all actions necessary to obtain approval of this Stipulation and the Creditors DIP by orders of the Bankruptcy Court in the Bankruptcy Case in orders, the form and substance of which to be reasonably acceptable to the Parties. The order approving this Stipulation (the "Approval Order") shall be in substantially the form attached to this Stipulation or otherwise in form and substance acceptable to each of the Parties hereto.

9.    Binding Effect. On the Effective Date (defined below), this Stipulation shall be binding on the Debtors' respective bankruptcy estates, and each of their successors and assigns, and all creditors and parties-in-interest in the Bankruptcy Case, including, without limitation, any trustee appointed in the Bankruptcy Case.

- 16 -

WM01/

822392_4

10.    <u>Counterpart Execution</u>.  This Stipulation may be executed in counterparts and by facsimile signature, and the counterparts together shall constitute an original, fully executed and integrated agreement binding on all Parties.

11.    <u>Entire Agreement/Modification of Stipulation</u>.  The provisions of this Stipulation constitute the entire agreement among the Parties in respect of the subject matter hereof, and there are no promises, undertakings, representations or warranties by the Parties relative to the transactions contemplated hereby not expressly set forth herein.  No amendment, modification, or discharge of this Stipulation shall be valid or binding unless reduced to writing and duly executed by an authorized representative of each of the Parties.

12.    <u>Continuing Jurisdiction</u>.  It is hereby agreed that the Bankruptcy Court shall have continuing jurisdiction over the various matters identified herein to effect the terms and conditions of this Stipulation and enforcement thereof.  Each of the Parties hereby stipulate, consent, and agree and subject themselves to the jurisdiction of the Bankruptcy Court for purposes of any and all proceedings related to or arising from this Stipulation, including but not limited to any proceeding to enforce the terms of this Stipulation.

13.    <u>Effective Date</u>.  This Stipulation shall be effective on the date (the "Effective Date") that it is entered by the Bankruptcy Court.  In the event the Effective Date does not occur, this Stipulation shall be rendered void and of no effect, and the agreements, acknowledgements and statements made herein shall not be deemed to be binding on, or an admission by any Party to this Stipulation.

14.    <u>Authority</u>.  The undersigned represent that they have the requisite authority to enter into and execute this Stipulation on behalf of the Parties for whom they have executed this Stipulation.

- 17 -

WM01/

822392_4

IN WITNESS WHEREOF, the parties have executed this Stipulation on the date set forth

above.


Dated: August 28, 2009

_____
Lawrence G. McMichael
Anne M. Aaronson
Catherine G. Pappas
DILWORTH PAXSON LLP
1500 Market St., Suite 3500E
Philadelphia, PA 19102
Telephone: (215) 575-7000
Facsimile: (215) 575-7200

-and-

Mark K. Thomas (admitted pro hac vice)
Paul V. Possinger (admitted pro hac vice)
Peter J. Young (admitted pro hac vice)
PROSKAUER ROSE LLP
Three First National Plaza
70 West Madison
Suite 3800
Chicago, Illinois 60602-4342
Telephone: (312) 962-3550
Facsimile: (312) 962-3551


Co-Counsel for the Debtors and Debtors in Possession

_____
Andrew C. Kassner
Andrew J. Flame
David Abernethy
DRINKER BIDDLE & REATH LLP
One Logan Square
18th & Cherry Streets
Philadelphia, PA 19103-6996
Telephone: (215) 988-2700
Fax: (215) 988-2757

Attorneys for Citizens Bank of Pennsylvania, as
Agent for the Prepetition Secured Lenders


- 18 -

Gary M. Schildhorn
Ronald S. Gellert
Brya M. Keilson
ECKERT SEAMANS CHERIN & MELLOTT, LLC
Two Liberty Place
50 South 16th Street
22nd Floor
Philadelphia, PA 19102
Telephone:   (215) 851-8400
Facsimile:   (215) 851-8383

-and-

Ben H. Logan
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Telephone:   (213) 430-6000
Facsimile:   (213) 430-6407

Gerald C. Bender
O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, NY 10036
Telephone:   (212) 326-2000
Facsimile:   (212) 326-5151

Counsel for the Official Committee of Unsecured
Creditors of Philadelphia Newspapers, LLC, *et al.*

Fred S. Hodara
Abid Qureshi
Alexis Freeman
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, NY   10036
Telephone:   (212) 872-1000
Facsimile:   (212) 872-1002

Attorneys for the Steering Group of Prepetition
Secured Lenders

WM01/

822392_4

APPROVED AND SO ORDERED,

BY THE COURT:

8/28/09

Stephen Raslavich
Chief United States Bankruptcy Judge

- 20 -

WM01/

822392_4

# EXHIBIT A

[Term Sheet]

822392_4

DBR Draft:  8/28/09

CONFIDENTIAL COMMUNICATION;
FOR DISCUSSION PURPOSES ONLY

SUBJECT TO FRE 408 AND STATE
RULES OF SIMILAR IMPORT
AND IS SUBJECT TO CHANGE

<u>PHILADELPHIA NEWSPAPERS, LLC</u>

SUMMARY OF TERMS AND CONDITIONS OF A PRIMING DIP FACILITY

| <u>Transaction</u>: | This summary of terms and conditions outlines the proposed structure and terms of the priming DIP facility (the *"DIP Facility"*) to be provided by Citizens Bank of Pennsylvania and certain other lenders to be arranged by the Post-Petition Agent (collectively, the *"DIP Lenders"*) to Philadelphia Newspapers, LLC (the *"Borrower"*), as a debtor-in-possession, in the Chapter 11 bankruptcy cases (the *"Cases"*) jointly administered under Case Numbers 09-11204, 09-11205, 09-11207, 09-11208, 09-11209, 09-11211, 09-11212 and 09-14315 that have been commenced by it and certain affiliates in the United States Bankruptcy Court for the Eastern District of Pennsylvania (the *"Bankruptcy Court"*). |
|---|---|
| <u>Lead Arranger, Co-Syndication Agent and Post-Petition Agent</u>: | Citizens Bank of Pennsylvania (the *"Post-Petition Agent"*). |
| <u>Co-Syndication Agent</u>: | Wells Fargo Foothill, Inc. |
| <u>Guarantors</u>: | PMH Acquisition, LLC (*"Holdings"*); Philadelphia Media Holdings, LLC (*"Parent"*); PMH Holdings, LLC; Philadelphia Direct, LLC; Philly Online, LLC; Broad Street Video, LLC; Philadelphia Media, LLC; and Broad Street Publishing, LLC, all of which are debtors and debtors in possession in the Cases (collectively, *"Guarantors"*).  The Borrower and the Guarantors are collectively referred to herein as the *"Loan Parties."*  The liability of the Loan Parties for the obligations, indebtedness and liabilities contemplated under or pursuant to this term sheet (this *"Term Sheet"*), the credit agreement (the *"DIP Credit Agreement"*), the other agreements, documents, notes and instruments executed and delivered to evidence the post-petition financing contemplated by this term sheet (collectively, the *"DIP Documentation"* and together with the Interim Order and the Final Order (each as defined below), the *"Post-Petition Financing Documents"*) shall be joint and several. |

| Interim Order: | The order of the Bankruptcy Court entered on an interim basis and from which no appeal or motion to reconsider has been timely filed, and which order is not subject to a stay of any court of competent jurisdiction, unless otherwise agreed to by the Requisite Lenders in their sole discretion (the *"Interim Order"*) in the Cases with respect to the Loan Parties and the DIP Credit Agreement shall be in form and substance acceptable to the Post-Petition Agent and the Requisite Lenders in their sole discretion. |
|---|---|
| Final Order: | The order of the Bankruptcy Court entered in the Cases after a final hearing, and from which no appeal or motion to reconsider had been timely filed, or if timely filed, such appeal or motion to reconsider has been dismissed or denied, and which order is not subject to a stay of any court of competent jurisdiction, unless otherwise agreed to by the Requisite Lenders in their sole discretion (the *"Final Order"*), with respect to the Loan Parties and the DIP Credit Agreement shall be in form and substance acceptable to the Post-Petition Agent and the Requisite Lenders in their sole discretion. |
| Purposes: | The loans under the DIP Credit Agreement (the *"DIP Loans"*) shall be available (a) to fund working capital requirements of the Borrower and the other subsidiaries of Holdings that are Guarantors (the *"Guarantor Subsidiaries"*), operating expenses of the Borrower and Guarantor Subsidiaries, capital expenditures and other line items in accordance with the terms of the Budget, subject to the Stipulation (defined below) limitations; (b) to fund allowed fees and expenses incurred by the Loan Parties' professionals and provided for in the Budget (including, without limitation, a claims and notice agent) during the administration of the Cases (the *"Professional Fees"*), subject to the Stipulation limitation; (c) to fund the payment of interest accrued on the DIP Loans; (d) to pay fees and expenses of the Post-Petition Agent and the Lenders party to the DIP Credit Agreement on its effective date related to the DIP Facility and the Cases, including, without limitation, due diligence fees, attorneys' fees, fees of professional advisors, and fees of consultants; (e) to pay all outstanding fees and expenses of the holders of the Pre-Petition Senior Secured Obligations (the *"Pre-Petition Lenders"*) and the pre-petition agent therefor (the *"Pre-Petition Agent"*) relating to the Cases, including reasonable attorneys' fees, and any and all other fees and expenses of the Pre-Petition Lenders and the Pre-Petition Agent provided for in the Pre-Petition Loan Documents (as defined below) (the *"Pre-Petition Lender Fees"*) subject to the Stipulation limitations; and (f) subject to the entry of the Final Order, to pay subsequently incurred Pre-Petition Lender Fees as |

2

they are invoiced, within 15 days from the receipt of an invoice subject to the Stipulation limitations.

Neither the proceeds of the DIP Loans nor the Pre-Petition Lenders' cash collateral nor the Carve-Out amount (as defined below) shall be transferred to, or used by, any entity other than Borrower for itself or the Guarantor Subsidiaries, except as permitted by the Post-Petition Agent and the Requisite Lenders (as defined below) or as set forth in the Budget (as defined below). *No portion of the DIP Loans, the Carve-Out or any cash collateral of the Pre-Petition Lenders or the DIP Lenders shall be used to assert any claim, cause of action, objection, action, complaint, motion, application, pleading, plan or other filing against the Pre-Petition Agent or the Pre-Petition Lenders, or their advisors, agents and subagents, and/or challenging any claim or lien of the Pre-Petition Agent or the Pre-Petition Lenders or the validity or enforceability of that certain Credit and Guaranty Agreement dated as of June 29, 2006 as amended (as so amended and as the same may be further amended, restated, supplemented or otherwise modified from time to time in accordance with the term thereof and the DIP Documentation, the "Pre-Petition Credit Agreement"), including any and all documents executed in connection therewith or relating thereto (collectively, the "Pre-Petition Loan Documents"), and/or challenging any pre-petition payment or transfer to, or for the benefit of, the Pre-Petition Agent or the Pre-Petition Lenders, and/or objecting to or contesting in any manner a chapter 11 plan of reorganization proposed or supported by the Post-Petition Agent and the Requisite Lenders if and when permitted by the Bankruptcy Court, and/or to pay (a) salaries or bonuses to the Publisher and Chief Executive Officer, the Executive Vice President, Finance, and the Executive Vice President of Production, Labor, and Purchasing of the Parent, Borrower, or any Guarantor Subsidiaries, beyond or above any salary or bonus amounts that were in place prior to December 2008, (b) expenses of any of the foregoing beyond and above the expenses reimbursable as of December 2008, (c) the Debtors' advisory board, (d) any fees or expenses in connection with any proposed debtor-in-possession financing facility other than the DIP Facility, or (e) direct or indirect costs and expenses related to the Debtors' "Keep It Local" campaign or other public relations.*

In addition, the use of DIP Loans, the Carve-Out, or any cash collateral of the Pre-Petition Lenders shall be subject to the terms and limitations set forth in the Stipulation and Order, dated August 28, 2009 (the "**Stipulation**"), between the Debtors, the

3

|  | Pre-Petition Agent, the Steering Group of Pre-Petition Secured Lenders, and the Official Committee of Unsecured Creditors in the Cases. |
|---|---|
| Budget: | A detailed monthly budget covering the succeeding 6 month period, in form and substance satisfactory to the Post-Petition Agent and the Requisite Lenders (with such supporting detail as the Post-Petition Agent or its financial advisors may request) (the "*Budget*"), shall be provided to the Post-Petition Agent and the DIP Lenders prior to the initial funding of the DIP Facility. Upon the completion of each monthly period, the Borrower shall deliver a variance analysis, which shall be acceptable to the Post-Petition Agent and the Requisite Lenders, with respect to all items from the most recently completed monthly period. |
| Security: | First and priming liens (the "*DIP Loan Liens*") on all assets of the Borrower and Guarantors, including, without limitation, a pledge of the equity in Parent and all subsidiaries of Parent and those assets that are subject to liens granted pursuant to the Pre-Petition Loan Documents, and including (i) (after entry of the Final Order) any proceeds of, or property and interests recovered in respect of, claims or causes of action arising under section 544, 545, 547, 548, and 549 of the United States Bankruptcy Code; but excluding (ii) any specified assets (other than those assets that are subject to liens granted pursuant to the Pre-Petition Loan Documents) as to which a valid, perfected and unavoidable lien existed as of the date the Case commenced, as to which assets a junior lien shall be granted. Pursuant to Section 364(c)(1) of the Bankruptcy Code, the obligations under the DIP Facility shall be entitled to superpriority claim status in the Cases. The DIP Loan Liens shall be subject and subordinate to payment of (i) the Professional Fees incurred prior to the earliest of (a) an Event of Default (as defined in the DIP Documentation), (b) the termination of the DIP Facility, or (c) the maturity date of the DIP Facility (the earliest, the "Carve-Out Date"), (ii) the sum of $250,000 for payment of costs and expenses incurred after the Carve-Out Date, and (iii) fees of the United States Trustee (collectively, the "*Carve-Out*"). |
| DIP Facility Amount: | $15,000,000 facility, of which $5,250,000 will be a term loan, made upon entry of the Interim Order, and $9,750,000 will be a revolver, available upon entry of the Interim Order. |
| Availability: | Availability of revolver subject to a borrowing base (the "*Borrowing Base*"), which equals (a) the sum of (i) 80% of eligible accounts receivable and (ii) the lesser of 60% of eligible |

4

|  |  |
|---|---|
|  | inventory and 85% of the appraised net orderly liquidation value of inventory, in each case, net of customary reserves, less (b) the amount of the term loan.<br><br>Aggregate funded balance of DIP Facility must remain within the Borrowing Base at all times. |
| Interest Rates: | At the option of Borrower: (i) Base Rate plus 800 basis points or Adjusted LIBOR plus 1000 basis points. "Base Rate" is defined as the highest of (a) the Post-Petition Agent's prime rate, (b) the federal funds rate plus 50 basis points, (c) one month LIBOR (as at any date of determination) plus 100 basis points or (d) 450 basis points. "Adjusted LIBOR" is defined as the higher of reserve adjusted one month LIBOR (locked in for the applicable one month period) and 250 basis points. |
| Default Interest: | During the continuance of an Event of Default, DIP Loans, interests, fees and other amounts due under the DIP Facility will bear interest at a rate that is 200 basis points per annum greater than the rate otherwise applicable to DIP Loans at such time. |
| Administrative Fee: | Per separate fee letter |
| Fronting Fee: | 35 basis points (where applicable) per separate fee letter |
| Participation Upfront Fee: | 350 basis points |
| Unused Fee: | 450 basis points |
| Maturity Date: | The date that is the earliest of the following: (a) 6 months from the date of the DIP Credit Agreement, (b) the earlier of (x) the date upon which the Interim Order expires or (y) 30 days after the entry of the Interim Order, in either case, if the Final Order has not been entered prior to the expiration of such period, (c) if a plan of reorganization has been confirmed by order of the Bankruptcy Court, the earlier of (x) the effective date of such plan of reorganization or (y) the 30th day after the date of entry of the confirmation order, (d) the closing of a sale of substantially all of the equity or assets of the Borrower, (e) the date of indefeasible prepayment in full by Borrower of all obligations under the DIP Facility in accordance with the terms hereof and thereof, or (f) upon acceleration of the DIP Loans. |
| Requisite Lenders: | DIP Lenders holding more than 66 2/3% of the aggregate DIP commitments; provided, however, if there are four or more unaffiliated DIP Lenders, then Requisite Lenders must include |

FP01/ 3189447.33

PNI- DIP Term Sheet (v 33)

| | |
|---|---|
| | three unaffiliated DIP Lenders; and if there are three unaffiliated DIP Lenders, then Requisite Lenders must include two unaffiliated DIP Lenders. |
| <u>Affirmative and Negative Covenants:</u> | Usual and customary for facilities of this nature including: (i) prohibitions against the Borrower using any cash or the proceeds of any DIP Loans in a manner or for a purpose other than in accordance with the DIP Credit Agreement and the Budget, (ii) receipt of specified financial information and other information as may be required by the Post-Petition Agent, the DIP Lenders and their advisors (including, without limitation, detailed reporting of inventory and accounts receivable), and (iii) prohibitions against the Debtors seeking any extension of the exclusivity period beyond November 2, 2009 to file or obtain acceptance of a plan of reorganization.<br><br>Holdings shall engage in no activities other than holding the equity of Borrower and other specified activities. Parent shall engage in no activities other than holding the equity of Holdings and other specified activities.<br><br>Other covenants to include, without limitation: delivery of an initial 13 week cash flow forecast and supplemental 13 week cash flow forecasts (each a "Thirteen Week Forecast) delivered, in each case, no later than 5 days prior to the commencement of the relevant 13 week period; monthly financial statements, reports, accountants' letters, projections, officers' certificates; weekly and monthly reporting packages (including weekly reports of actual cash flow to be received no later than the subsequent Wednesday of each reporting period) and other information reasonably requested by the Post-Petition Agent and the DIP Lenders (including information required to be delivered to the Pre-Petition Agent and Pre-Petition Lenders pursuant to any order of the Bankruptcy Court authorizing the use of cash collateral, information required to be delivered pursuant to the Cases and reports with respect to compliance with the Budget as provided herein); maintenance of existence; maintenance of properties, notice of default, litigation and other material events; taxes; compliance with laws, governmental approvals, environmental compliance; books and records; inspection rights; use of proceeds; collateral and security interests; certain obligations respecting subsidiaries; restriction on other indebtedness; and the delivery of current appraisals on the real estate, property, plant and equipment of the Borrower and the Guarantors, all of which shall be in form satisfactory to the Post-Petition Agent and the Requisite Lenders. The Thirteen Week Forecast shall be subject |

FP01/ 3189447.33

PNI- DIP Term Sheet (v 33)

| | |
|---|---|
| | to Requisite Lender approval.<br><br>The Borrower shall cooperate with and permit the Post-Petition Agent and the Requisite Lenders to have reasonable access to the Collateral and records during normal business hours. The Borrower shall make available to the Post-Petition Agent and the DIP Lenders at Post-Petition Agent's or any DIP Lenders' reasonable request all documents related to the sale of the collateral granted under the Pre-Petition Credit Agreement (the "*Pre-Petition Collateral*") prior to their filing with the Court.<br><br>***Other affirmative and negative covenants to be determined.*** |
| <u>Financial Covenants:</u> | Monthly financial covenants in connection with (a) Minimum Consolidated Adjusted EBITDA (to be defined), (b) Maximum Capital Expenditures of $3,000,000 in the aggregate, (c) negative variance between either (i) total cash receipts projected in any Thirteen Week Forecast and actual cash receipts shown in the weekly cash flow statement for the corresponding period or (ii) disbursements shown in any weekly cash flow statement on a line item basis and disbursements projected in the Thirteen Week Forecast for the corresponding period on a line item basis, shall not exceed 10%, in each case determined weekly on a rolling four week basis, and (d) Minimum Liquidity of $4,000,000. |
| <u>Mandatory Prepayments:</u> | Usual and customary, including:<br><br>100% of the net proceeds of asset sales.<br><br>100% of the net proceeds of insurance and condemnation awards.<br><br>100% of the net proceeds of any debt issuance or equity issuance. |
| <u>Events of Default:</u> | Customary events of default, including, without limitation, failure to make payments when due; non compliance with covenants; breaches of representations and warranties; default in other agreements relating to post-petition indebtedness; impairment of loan documents or security; change of ownership or control; dismissal of any of the Cases or conversion to a chapter 7 case; appointment of a chapter 11 trustee; appointment of a responsible officer or examiner with enlarged powers relating to the operation of the business of any of the Borrower or any Guarantor; granting relief from the automatic stay to permit foreclosure on assets of any of the Borrower or any Guarantor; filing of a motion by the Borrower or any Guarantor requesting, or entry of an order granting, any super-priority claim which is senior or *pari passu* |

7

| | |
|---|---|
| | with the DIP Lenders' claims or with the claims of the Pre-Petition Lenders under the Pre-Petition Loan Documents; entry of an order without the prior consent of the Requisite Lenders amending, supplementing or otherwise modifying of either the Interim Order or Final Order; obtaining or seeking additional financing under section 364(c) or 364(d) of the Bankruptcy Code or granting liens not permitted under the DIP Facility (unless the DIP Facility is paid in full) or using cash collateral without the consent of Post-Petition Agent and the Requisite Lenders or seeking to reduce, set-off or subordinate DIP Obligations or related liens; reversal, vacation or stay of the effectiveness of either the Interim Order or Final Order; payment with respect to pre-petition debt (other than as approved by the Post-Petition Agent, the Requisite Lenders and the Bankruptcy Court); cessation of liens or super-priority claims granted with respect to the DIP Facility to be valid, perfected and enforceable in all respects; any adverse effect on revenues as a result of any strike, lockout or labor dispute; and any default under any order of the Bankruptcy Court authorizing the use of cash collateral. <br><br> ***Other Events of Default to be determined.*** |
| Conditions: | To include: receipt of an acceptable initial Budget, receipt of all necessary consents, finalization of satisfactory legal documentation (including representations and warranties, covenants, events of default and other terms and conditions, security documents deemed appropriate by the Post-Petition Agent and the DIP Lenders for a transaction of this type), receipt of Bankruptcy Court approval of the Interim Order, acceptable to the Post-Petition Agent and the Requisite Lenders in their sole discretion, the absence of any claim, litigation, action, suit, investigation or proceeding, pending or threatened, which, in the reasonable opinion of the Post-Petition Agent or the Requisite Lenders has any reasonable likelihood of having a material adverse effect, payment of fees of Post-Petition Agent, DIP Lenders, Pre-Petition Agent, and Pre-Petition Lenders, and the receipt of UCC, tax and judgment lien search results satisfactory to the Post-Petition Agent and the Requisite Lenders. |
| Remedies: | Upon the occurrence of an Event of Default, the Post-Petition Agent and the DIP Lenders shall have customary remedies, including, without limitation, the right (exercisable upon five (5) business days' prior written notice to the Borrower) to realize on any or all Collateral without the necessity of obtaining any further relief or order from the Bankruptcy Court. The Bankruptcy Court shall retain exclusive jurisdiction with respect to all matters |

8

|  |  |
|---|---|
|  | relating to the exercise of rights and remedies under the DIP Documentation, the Interim Order, the Final Order and with respect to the Collateral. The only issue as to which the Borrower may seek Bankruptcy Court intervention at any hearing seeking to delay or prevent the Post-Petition Agent and DIP Lenders from exercising remedies shall be whether an Event of Default has, in fact, occurred and is continuing. |
| Expenses: | Borrower shall pay the costs and expenses of the Post-Petition Agent and as otherwise set forth in the commitment letter regardless of whether the DIP Facility closes. |
| Other: | This term sheet is submitted for discussion purposes only and describes the general basis upon which the Post-Petition Agent and the DIP Lenders are prepared to continue their efforts. This proposal is intended as an outline only of certain of the material terms of the DIP Facility and does not purport to summarize all of the terms and conditions that may be determined by the Post-Petition Agent or the DIP Lenders to be appropriate for the DIP Facility. The actual terms and conditions upon which the Post-Petition Agent and the DIP Lenders may consummate the DIP Facility are subject to change. |
|  | Any information delivered to the Post-Petition Agent in connection with the DIP Facility may be disclosed to any and all of the Pre-Petition Agent and the Pre-Petition Lenders. |
|  | THIS TERM SHEET DOES NOT CONSTITUTE AN OFFER, AGREEMENT OR COMMITMENT TO LEND OR TO ENTER INTO OR CONTINUE NEGOTIATIONS RESPECTING THE SAME. |

FP01/ 3189447.33

PNI- DIP Term Sheet (v 33)